IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LUCAS M. IVERS,<br><br>    *Plaintiff,*<br><br>v.<br><br>BRENTWOOD BOROUGH SCHOOL DISTRICT, *et al*,<br><br>    *Defendants.* | Civil Action No. 2:20-cv-1244<br><br>Hon. William S. Stickman IV |

**MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

  In August 2020, Lucas M. Ivers ("Ivers") filed a Complaint in the Court of Common Pleas of Allegheny County, Pennsylvania against Brentwood Borough School District ("School District"), Floyd Olsavicky ("Olsavicky"), Aggie Greer ("Greer"), Brentwood Emergency Medical Services ("Brentwood EMS"), and a minor, N.M. (ECF No. 1-2). The case concerns the assault of Ivers by N.M. during gym class. Defendants collectively removed the case to this Court in late August 2020. (ECF No. 1). In September 2020, Defendants Brentwood School District, Olsavicky and Greer (collectively "School District Defendants") filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and a supporting brief. (ECF Nos. 5 and 6). Briefing is now complete, and the motion is ripe for adjudication. It will be granted in part and denied in part.

  **I.**  **STANDARD OF REVIEW**

  A motion to dismiss filed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

1

A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); *see also DiCarlo v. St. Marcy Hosp.*, 530 F.3d 255, 262–63 (3d Cir. 2008). Although this Court must accept the allegations in the Complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement, but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts give rise to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

## II.   FACTUAL BACKGROUND

On June 5, 2018, Ivers and the minor Defendant, N.M., were students at Brentwood High School, in the Brentwood School District. They were in gym class playing against one another in a basketball game. During the game, N.M. became angry with Ivers and made contact by

"slapping," "elbowing [Ivers] in the ribs," and "pushing [Ivers] in the face." Olsavicky, the gym teacher, was present and observed these acts. When N.M. attempted to slap Ivers again, at approximately 1:00 p.m., Ivers grabbed N.M.'s arm, which caused both boys to fall to the ground. N.M. then "lifted [Ivers] up on his shoulders and said, 'it's over.'" He slammed Ivers to the ground and Ivers' head "forcefully" hit the gym floor. Ivers was unable to move; he could not feel his torso, arms or legs, including his left hand that was lodged underneath his body. Olsavicky approached and tapped Ivers on the shoulder to see if he was awake and alright. Olsavicky walked away. The school nurse, Greer, arrived at approximately 1:15 p.m. When she asked Ivers to get up, he responded, "I can't move." Greer told Ivers he was fine and that he could get up from the floor. When he requested assistance, Greer said he could do it himself. All the while, Ivers was crying. At some point, Greer "slid" Ivers to the wall with her hand on his back. At no point did Greer "stabilize or immobilize" Ivers' spine. (ECF No. 1-2, ¶¶ 12-27).

Brentwood Emergency Services arrived and Greer said Ivers was fine and it was "okay to lift [Ivers] without a spinal stabilization." Paramedics strapped Ivers onto a stretcher. When Ivers' mother arrived, she expressed concern because his shoulders appeared crooked. Paramedics told her that Ivers was okay, his condition was not serious, and that the nurse had cleared his neck. (ECF No. 1-2, ¶¶ 28-36).

Ivers' mother took him to her vehicle with the assistance of two men and transported him to a nearby MedExpress for treatment. On the way, as Ivers was in and out of consciousness, she determined he needed to go to Children's Hospital instead of MedExpress. She then drove home and got Ivers an ice pack, ibuprofen and water. While she was inside, Ivers slid out of the car and onto the driveway pavement. Brentwood Emergency Services paramedics, some of whom had treated Ivers at the school, arrived. One paramedic asked Ivers to hug himself, which he was

3

unable to do. That paramedic took Ivers' arms and crossed them against his chest. Another paramedic lifted Ivers' legs while another paramedic lifted Ivers' arms to place him on a stretcher. Ivers was transported to the emergency room at Jefferson Memorial Hospital. Once there, doctors and staff asked why Ivers' neck and back were not stabilized and an argument ensued between them and the paramedics. (ECF No. 1-2, ¶¶ 28-52).

### III.  ANALYSIS

#### A. Counts I, II, IV, V, VII, VIII, IX and XI as well as the official capacity claims at Counts VI and X will be dismissed with prejudice.

School District Defendants seek dismissal of Counts I, II, IV, V, VII, VIII, IX and XI in their entirety as well as the claims asserted in Counts VI and X against Olsavicky and Greer in their official capacities. In his Response to School District Defendants' motion to dismiss, Ivers did not respond to School District Defendants' arguments. Instead, Ivers simply contested the dismissal of the state-created danger claims – Counts III, VI, and X. By virtue of Ivers' failure to respond to School District Defendants' arguments as to why Counts I, II, IV, V, VII, VIII, IX and XI, as well as the claims asserted in Counts VI and X against Olsavicky and Greer in their official capacities, should be dismissed, the Court is permitted to draw the inference that those arguments remain unopposed. The Court will grant School District Defendants' motion to dismiss these counts. *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1992) (explaining that if a party represented by counsel fails to oppose a motion to dismiss, the district court may treat the motion as unopposed and subject to dismissal without a merits analysis); *see also Tambasco v. United States Dept. of Army*, No. 17-1857, 2018 WL 1203466, at *2 (M.D. Pa. Mar. 8, 2018) (dismissing claims as unopposed when the plaintiff failed to respond to arguments made by the defendants in support of their motion to dismiss); *Sikkelee v. Precision Airmotive Corp.*, No. 07-886, 2011 WL 1344635, at *4 (M.D. Pa. Apr. 8, 2011) (dismissing claims as

unopposed when the plaintiff failed to respond to arguments made by the defendants in support of their motion to dismiss); *Lada v. Delaware County Community College*, No. 08-4754, 2009 WL 3217183, at *10 (E.D. Pa. Sept. 30, 2009) ("To put it simply: plaintiffs who fail to brief their opposition to portions of motions to dismiss do so at the risk of having those parts of the motions to dismiss granted as uncontested."). Further, all of these counts will be dismissed with prejudice as Ivers' failure to respond to School District Defendants' arguments demonstrates that leave to amend would be futile. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (a court may decide to deny leave to amend for reasons such as undue delay, bad faith, dilatory motive, prejudice, and futility); *see also* 3 Moore's Federal Practice – Civil § 15.15[4] (2019) ("An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss.").

### B. Count X can proceed, but Counts III and VI will be dismissed without prejudice.

Ivers claims a violation of substantive due process under the Fourteenth Amendment due to the injuries he suffered as a result of N.M.'s physical attack and his medical treatment thereafter by school and emergency personnel. The Due Process Clause provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. Ivers invokes the substantive component of due process, which "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (citation omitted). The Third Circuit has recognized that "[i]ndividuals have a constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 235 (3d Cir.

2008) (citation omitted); *see also Ingraham v. Wright,* 430 U.S. 651, 673 (1977) ("Among the historic liberties so protected [by the Due Process Clause] was a right to be free from and obtain judicial relief, for unjustified intrusions on personal security."). However, the Due Process Clause does not impose an affirmative obligation on the state to protect its citizens against private violence. *See DeShaney v. Winnebago County Dept. of Soc. Servs.,* 489 U.S. 189, 195–96 (1989). The Due Process Clause forbids the state *itself* from depriving "individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *Id.* at 195. In a system of limited government, no government— federal, state or local—can be charged with the obligation or authority to guarantee that harm will not befall is citizens from the acts of their fellow citizens.[1]

Count III against the School District, Count VI against Olsavicky, and Count X against Greer are brought under a state-created danger theory of liability – *i.e.*, that the School District and its gym teacher and nurse created (or exacerbated) a dangerous situation for Ivers. It is a limited exception to the general rule that "nothing in the language of the Due Process Clause itself requires the state to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney*, 489 U.S. at 201. The state-created danger theory is a way for liability to attach where the state acts to create or enhance a danger that, when realized, deprives a plaintiff of their Fourteenth Amendment right to substantive due process. The Third Circuit recognized the state-created danger theory of liability over two decades ago, *see Kneipp v.*

---

[1] Courts have recognized a governmental duty to protect where there is a "special relationship" between the state and an individual. *Morrow v. Balaski*, 719 F.3d 160, 167 (3d Cir. 2013) (en banc). The Third Circuit has conclusively held that such a relationship does not exist between schools and their students. *Id.*

6

*Tedder*, 95 F.3d 1199, 1211-13 (3rd Cir. 1996), and it has developed the following four-prong test to establish whether a claim is meritorious:[2]

> (1) the harm ultimately caused was foreseeable and fairly direct;
>
> (2) a state actor acted with a degree of culpability that shocks the conscience;
>
> (3) a relationship between the state and the plaintiff existed such that "the plaintiff was a foreseeable victim of the defendant's acts" or a "member of a discrete class of persons subjected to the potential harm brought about by the state's actions," as opposed to any member of the public in general; and
>
> (4) the state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland Cty.*, 443 F.3d 276, 281 (3d Cir. 2006). In order to maintain a claim under the state-created danger theory, Ivers must satisfy *all* four prongs.

### 1. *Count VI against Olsavicky.*

The Court finds that Ivers has not sufficiently pled a state-created danger claim against Olsavicky in Count VI. More specifically, he has not alleged facts to meet the fourth element of the aforementioned test. In *Morrow*, the Third Circuit held that the plaintiff failed to state a state-created danger claim because a school's repeated inaction and failure to protect a student does not constitute an "affirmative act." The "affirmative act" requirement "serves to distinguish cases where officials might have done more from cases where officials created or increased the risk itself." *Id.* at 179 (alterations and citation omitted). "It is a misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." *Bright*, 443 F.3d at 282.

---

[2] As recently as September of last year, a panel of the Third Circuit expressed its view that the full Court should revisit the state-created danger theory finding it to be a "troubling" expansion of substantive due process. *Johnson v. City of Philadelphia*, 975 F.3d 394, 404-05 (3d Cir. 2020). The Honorable Paul B. Matey, in a concurring opinion, noted that the "Due Process Clause of the Fourteenth Amendment 'does not transform every tort committed by a state actor into a constitutional violation.'" *Id.* at 404 (citation omitted).

7

Olsavicky's inaction when he first saw N.M. become angry with Ivers during the basketball game and make contact with Ivers by "slapping," "elbowing [Ivers] in the ribs," and "pushing [Ivers] in the face," does not amount to an affirmative act that created or exacerbated the danger Ivers experienced. Ivers is essentially taking issue with Olsavicky's failure to intervene and stop N.M.'s assault of him during a basketball game in gym class. Such an allegation is unsupported by caselaw. The Third Circuit has consistently held that inaction does not give rise to an affirmative act. *See e.g. Johnson*, 975 F.3d at 401. It is insufficient to establish liability under *Morrow*.

For these reasons, the Court will dismiss without prejudice Count VI against Olsavicky for failure to state a claim. While the Court questions whether amendment can cure the deficiencies in Ivers' Complaint as to Olsavicky, it will nonetheless permit him twenty-one days to file an amended complaint.

### 2. *Count X against Greer*

Ivers faults Greer for not adequately examining and stabilizing him, for sliding him to the wall with her hand on his back, and for telling paramedics he was fine and it was "okay" to lift him without spinal stabilization. He alleges that Greer was "deliberately indifferent" to him because "she observed the obvious and substantial harm and injury" to him, and "not only failed to adequately and safely take the necessary steps to treat [him], but worsened [his] condition through her actions and/or inaction." (ECF No. 1-2, ¶ 167). The Court holds that Ivers has met the minimal pleading requirements. He has pled all four elements of a state-created danger claim against Greer.

First, Ivers has set forth sufficient allegations that the harm ultimately caused was foreseeable and fairly direct – i.e., Greer, a medical professional, knowing that Ivers could not

8

move on the gym floor, failed to stabilize his neck, back or spine and instead slid him to the wall with her hand on his back. (ECF No. 1-2, ¶¶ 21-26). The inherent risk in her actions is not only a matter of medical experience, but a matter of common sense as is her decision to tell paramedics that Ivers was fine and it was "okay" to lift him without spinal stabilization. Ivers has adequately pled that she should have known the risk of her actions. The Court also concludes that Ivers has adequately pled that the harm caused to him was a result of Greer's conduct.

Second, Ivers has set forth sufficient facts that Greer acted with a degree of culpability that shocks the conscience. This element of the state-created danger theory "is often the most difficult for a plaintiff to show, and thus [the] ultimate conclusion frequently turns on [the] determination of whether given conduct 'shocks the conscience.'" *Estate of Smith v. Marasco*, 430 F.3d 140, 153 (3d Cir. 2005). The Third Circuit has stressed that "[t]he exact level of culpability required to shock the conscience ... depends on the circumstances of each case, and the threshold for liability varies with the state actor's opportunity to deliberate before taking action." *Kedra v. Schroeter*, 876 F.3d 424, 437 (3d Cir. 2017). In "'hyperpressurized environments requiring a snap judgment,' an official must actually intend to cause harm in order to be liable." *Id.* (alteration omitted) (quoting *Vargas v. City of Phila.*, 783 F.3d 962, 973 (3d Cir. 2015)). "In situations in which the state actor is required to act 'in a matter of hours or minutes,' ... the state actor [must] 'disregard a great risk of serious harm.'" *Id.* (quoting *Sanford v. Stiles*, 456 F.3d 298, 310 (3d Cir. 2006) (per curiam)). "And where the actor has time to make an 'unhurried judgment[ ],' a plaintiff need only allege facts supporting an inference that the official acted with a mental state of 'deliberate indifference.'" *Id.* (alteration omitted) (quoting *Sanford*, 456 F.3d at 309).

If the facts alleged against Greer are viewed under "emergency circumstances," then the intent-to-harm standard applies, which Ivers has not met. However, under the deliberate-indifference test, which Ivers has seemingly pled (*see* ECF No. 1-2, ¶ 167), his allegations are sufficient. Deliberate indifference in the substantive due process context is governed by an objective standard: it exists "when the risk of harm is so obvious that it should be known." *Kedra*, 876 F.3d at 439. Ivers alleges that Greer, knowing he was unable to move on the gym floor, failed to stabilize him, slid him up from the floor to a wall and apparently relayed to medical personnel that his spine did not need stabilized or immobilized. These allegations are sufficient at the pleading stage to satisfy a mental state of deliberate indifference that shocks the conscience. *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) ("[C]laims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' ... We have found 'deliberate indifference' ... where [a] prison official ... knows of a prisoner's need for medical treatment but intentionally refuses to provide it." (emphasis added)).

Third, Ivers has sufficiently pled the he was a foreseeable victim. This prong of the aforementioned test requires that some relationship exist between the state actor and the plaintiff such that the plaintiff was a foreseeable victim of the state actor's conduct. This element is easily satisfied here. Ivers was a student in gym class on the premises of the high school at the time of the incident. Greer, as the school nurse, was responsible for ensuring students' health, safety and welfare. In this sense, Ivers was a foreseeable victim of Greer's actions.

Fourth, as pled, Greer created or increased the risk of harm to Ivers by virtue of her actions. Greer was initially responsible for administering medical care to Ivers. Not only did she ignore his statements that he could not move and signs of distress and pain, but she took

affirmative action and moved him off the gym floor without stabilizing his neck and back. She then verbally relayed to responding paramedics that it would be okay to lift him without spinal stabilization. As pled, Greer created an opportunity for further harm to Ivers that would not have otherwise existed. Ivers presumably would have remained on the gym floor, and after evaluation by responding paramedics, spinal stabilization may have been provided.

In sum, the Court finds that Ivers has pled sufficient facts that Greer deprived him of his right to be free from state-created danger. The motion to dismiss will be denied as to Count X, and this claim can proceed.

### 3. *Count III against the School District*

In Count III of his Complaint, Ivers alleges the School District "had a duty to hire adequate teachers and staff and/or have adequate procedures in place to properly respond to and prevent altercations between students […]." (ECF No. 1-2, ¶ 81). He further alleges that the School District "had a duty to take proper measures to ensure the safety of Brentwood High School students, including [P]laintiff." (ECF No. 1-2, ¶ 83). More specifically, Ivers contends:

> The adopted practice, custom or policy is demonstrated by the fact that [P]laintiff and other students in gym class were not adequately supervised and were left to handle disputes on their own which often resulted in physical altercations resulting in severe injuries. More specifically, defendant Brentwood Borough School District adopted a practice, custom or policy of failing to intervene or attempt to prevent acts of violence where students demonstrated aggressive behavior towards other students and harassed, and/or bullied other students.

(ECF No. 1-2, ¶ 86). To reiterate, Ivers has alleged that the School District adopted a practice, custom or policy of "failing to intervene or attempt to prevent acts of violence where students demonstrated aggressive behavior towards other students and harassed, and/or bullied other students." (ECF no. 1-2, ¶ 86).

11

A municipal entity cannot be held liable pursuant to § 1983 under the theory of *respondeat superior*. *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 691 (1978). Instead, municipal entities, including school districts, may only be held liable under § 1983 on (1) an express municipal policy, such as an ordinance, regulation, or policy statement, *see Monell*, 436 U.S. at 694, (2) a "widespread practice, that although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law," *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)), or (3) the decision of a person with "final policymaking authority." *See Praprotnik*, 485 U.S. at 123; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986). A municipality may be held liable under § 1983 only when the enforcement of the municipal policy or practice was the "moving force" behind the violation of a plaintiff's federal protected right. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 400 (1997); *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989).

The Third Circuit has held that it is possible to hold a municipality liable for a substantive due process violation even if none of its employees are liable, *see Fagan v. City of Vineland*, 22 F.3d 1283, 1292 (3d Cir. 1994), however, there must be a "direct causal link" between the policy and the constitutional violation. *See Brown v. Pa., Dep't of Health and Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 482 (3d Cir. 2003) (citing *City of Canton,* 489 U.S. at 385). The policy or practice requirement is intended to "distinguish acts of the municipality from the acts of the employee for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479. A municipal policy or practice may be established one of two ways (1) through a decisionmaker possessing final authority issuing an official proclamation, policy, or edict, or (2) a course of conduct where such practices are permanently well-settled. *McTernan v. City of York, PA*, 564

F.3d 636, 658 (3d Cir. 2009) (citation omitted). As to the latter, a practice (or custom) requires both proof of knowledge and acquiescence by the decisionmaker. *Id.* at 658.

Assuming the existence of a viable claim for a violation of Ivers' constitutional rights, he has not alleged sufficient facts to plausibly identify a policy or practice attributable to the School District. No other specific, prior instances of school district administrators/personnel ignoring students' aggressive/violent behavior, harassment, or bullying are identified in the Complaint. He does not allege a history of similar incidents in the School District. Furthermore, there is no allegation that any reported incidents of students' aggressive/violent behavior, harassment, or bullying made it back to any school official. Nor it is obvious that School District personnel had a history or policy of providing inadequate medical care to injured students. Quite simply, Ivers has not set forth a *Monell* claim based on a policy or practice attributable to the School District.

For these reasons, Count III against the School District will be dismissed without prejudice for failure to state a claim. Since the Court is permitting Ivers to amend Count VI, it will also afford him the opportunity to amend Count III. He will have twenty-one days to do so.

### IV. CONCLUSION

For the aforementioned reasons of law and fact, the motion will be denied as to Count X against Greer and this claim can proceed without amendment. The motion will be granted with respect to all other counts at issue. Count VI against Olsavicky and Count III against the School District will be dismissed without prejudice for failure to state a claim. Ivers will be given twenty-one days to file an amended complaint. Counts I, II, IV, V, VII, VIII, IX and XI in their entirety as well as the claims asserted in Counts VI and X against Olsavicky and Greer in their official capacities will be dismissed with prejudice. An Order of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

<u>February 26, 2021</u>
Date