IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LUCAS M. IVERS,<br><br>     *Plaintiff*,<br><br>v.<br><br>BRENTWOOD BOROUGH SCHOOL DISTRICT, *et al*,<br><br>     *Defendants*. | Civil Action No. 2:20-cv-1244<br><br>Hon. William S. Stickman IV |

## **MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

In August 2020, Lucas M. Ivers ("Ivers") filed a Complaint in the Court of Common Pleas of Allegheny County, Pennsylvania against Brentwood Borough School District ("School District"), Floyd Olsavicky ("Olsavicky"), Aggie Greer ("Greer"), Brentwood Emergency Medical Services ("Brentwood EMS"), and a minor, N.M. (ECF No. 1-2). The case concerns the assault of Ivers by N.M. during gym class. The only count against Brentwood EMS is Count XII, and it alleged "professional liability – negligence." (ECF No. 1-2, ¶¶ 178-81). Defendants collectively removed the case to this Court in late August 2020. (ECF No. 1). Brentwood EMS filed its Answer, New Matter and Affirmative Defenses in September 2020. (ECF No. 7). Attached thereto as Exhibit 1 is the contract between the Borough of Brentwood and Brentwood EMS in effect at the time of the events outlined in Ivers' Complaint. (ECF No. 7-1). In November 2020, Defendant Brentwood EMS filed a Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c) and a supporting brief. (ECF Nos. 14 and 15). Briefing is now complete, and the motion is ripe for adjudication. The motion will be denied.

## I.     STANDARD OF REVIEW

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). Judgment is only granted when the moving party establishes that there are no material issues of fact and that it is entitled to judgment as a matter of law. *Sherzer v. Homestar Mortg. Serv.'s*, 707 F.3d 255, 257 (3d Cir. 2013) (citing *Allstate Prop. & Cas. Ins. v. Squires*, 667 F.3d 388, 390 (3d Cir. 2012)); *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 259 (3d Cir. 2008).

The primary distinction between motions under Rules 12(b)(6) and 12(c) is timing: if a motion is filed before an answer, it is a motion to dismiss; if it is filed after the answer, it is a motion for judgment on the pleadings. The distinction between these motions is merely semantic because the same standard of review generally applies to both. *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in a light most favorable to the plaintiff. *DiCarlo*, 530 F.3d at 262–263 (citation omitted). "[A] motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that a plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011). Although a court must accept the allegations in a complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The critical difference between motions to dismiss and motions for judgment on the pleadings is not the standard of a court's review, but its scope. Unlike with motions to dismiss, a court reviewing a motion for judgment on the pleadings considers not only the complaint, but also the written answer and attachments to the pleadings. *Compare In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." (citation omitted)), *with Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) ("It would seem to follow that if an attachment to an answer is a "written instrument," it is part of the pleadings and can be considered on a Rule 12(c) motion for judgment on the pleadings without the motion being converted to one for summary judgment."), and *Ferencz v. Medlock*, No. 11-1130, 905 F. Supp. 2d 656, 663 (W.D. Pa. 2012) ("The only notable difference is that a court, for a motion on the pleadings, may review not only the complaint but also the answer and written instruments attached to the pleadings." (citing *Brautigam v. Fraley*, 684 F. Supp. 2d 589, 591–92 (M.D. Pa. 2010)).

## II.   FACTUAL BACKGROUND

On June 5, 2018, Ivers and the minor Defendant, N.M., were students at Brentwood High School, in the Brentwood School District. They were in gym class playing against one another in a basketball game. During the game, N.M. became angry with Ivers and made contact by "slapping," "elbowing [Ivers] in the ribs," and "pushing [Ivers] in the face." Olsavicky, the gym teacher, was present and observed these acts. When N.M. attempted to slap Ivers again, at approximately 1:00 p.m., Ivers grabbed N.M.'s arm, which caused both boys to fall to the ground. N.M. then "lifted [Ivers] up on his shoulders and said, 'it's over.'" He slammed Ivers to the ground and Ivers' head "forcefully" hit the gym floor. Ivers was unable to move; he could not feel his torso, arms or legs, including his left hand that was lodged underneath his body. Olsavicky

approached and tapped Ivers on the shoulder to see if he was awake and alright. Olsavicky walked away. The school nurse, Greer, arrived at approximately 1:15 p.m. When she asked Ivers to get up, he responded, "I can't move." Greer told Ivers he was fine and that he could get up from the floor. When he requested assistance, Greer said he could do it himself. All the while, Ivers was crying. At some point, Greer "slid" Ivers to the wall with her hand on his back. At no point did Greer "stabilize or immobilize" Ivers' spine. (ECF No. 1-2, ¶¶ 12-27).

Brentwood EMS arrived and Greer said Ivers was fine and it was "okay to lift [Ivers] without a spinal stabilization." Paramedics strapped Ivers onto a stretcher. When Ivers' mother arrived, she expressed concern because his shoulders appeared crooked. Paramedics told her that Ivers was okay, his condition was not serious, and that the nurse had cleared his neck. (ECF No. 1-2, ¶¶ 28-36).

Ivers' mother took him to her vehicle with the assistance of two men and transported him to a nearby MedExpress for treatment. On the way, as Ivers was in and out of consciousness, she determined he needed to go to Children's Hospital instead of MedExpress. She then drove home and she went inside and got Ivers an ice pack, ibuprofen and water. At some point while she was inside, Ivers slid out of the car and onto the driveway pavement. Brentwood EMS paramedics, some of whom had treated Ivers at the school, arrived. One paramedic asked Ivers to hug himself, which he was unable to do. That paramedic took Ivers' arms and crossed them against his chest. Another paramedic lifted Ivers' legs while another paramedic lifted Ivers' arms to place him on a stretcher. Ivers was transported to the emergency room at Jefferson Memorial Hospital. Once there, doctors and staff asked why Ivers' neck and back were not stabilized and an argument ensued between them and the paramedics. (ECF No. 1-2, ¶¶ 28-52).

### III. ANALYSIS

Brentwood EMS argues that under Pennsylvania statutory law it is a local agency and, therefore, immune to suit pursuant to the Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa.C.S.A. § 8541, *et seq*. Alternatively, it argues that, as a first responder, it is entitled to immunity under the Pennsylvania Emergency Medical Services System Act ("EMSSA"), 35 Pa.C.S.A. § 8151. According to Brentwood EMS, no genuine issues of material fact exist that would establish the gross negligence necessary to overcome the immunities provided to it under both statutes. The Court disagrees.

#### A. PSTCA

PSTCA provides broad legal immunity for government bodies and their employees unless their actions fall within certain enumerated categories of negligence. *See* 42 Pa.C.S.A §§ 8541, 8545; 42 Pa.C.S.A § 8542(b) (listing exceptions as: vehicle liability; care, custody or control of personal property; real property; trees, traffic controls and street lighting; utility service facilities; streets; sidewalks; care, custody or control of animals; and sexual abuse). It provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S.A § 8541. In order to determine whether a given entity falls within the ambit of the Act, the Pennsylvania Supreme Court applies a two-prong approach. *Snead v. SPCA of Pa.*, 985 A.2d 909, 913 (Pa. 2009). Under the first prong, a court determines whether the entity meets the statutory definition of "local agency," and the second prong, requires an examination of the purpose of the Act and the entity's relationship to the political subdivision. *Id.*

The Pennsylvania Supreme Court has determined:

"Local agency" is defined as "[a] government unit other than the Commonwealth government." 42 Pa.C.S. § 8501. A "government unit" is defined as "any

5

> government agency," which includes "any political subdivision, municipal authority and other local authority, or any officer or agency of any such political subdivision or local authority." 42 Pa.C.S. § 102.... [T]he Judicial Code does not define "local authority," but ... the Statutory Construction Act describes it as "a municipal authority or any other body corporate and politic created by one or more political subdivisions pursuant to statute." . . . .

*Christy v. Cranberry Volunteer Ambulance Corps, Inc.*, 856 A.2d 43, 46 (Pa. 2004) (citations in original). Applying these statutory definitions, for an entity to be a local authority, and thus qualify for governmental immunity, it is necessary to determine if the entity is a non-profit corporation created by a political subdivision.

Here, the Borough of Brentwood, a political subdivision of the Commonwealth, entered into a contract ("EMS Agreement") with Brentwood EMS, a Pennsylvania non-profit corporation, designating Brentwood EMS as the primary provider of emergency medical services for the borough. (ECF No. 7-1, p. 2). It was authorized to do so under 8 Pa.C.S.A. § 1202(56) (stating that "[t]he specific powers of the borough shall include the following: (56) To ensure that fire and emergency medical services are provided within the borough by the means and to the extent determined by the borough, including the appropriate financial and administrative assistance for these services. The borough shall consult with fire and emergency medical services providers to discuss the emergency services needs of the borough. The borough shall require any emergency services organization receiving borough funds to provide to the borough an annual itemized listing of all expenditures of these funds before the borough may consider budgeting additional funding to the organization."). It may be that Brentwood EMS falls within the scope of "local agency" as that term is defined under the plain language of the PSTCA, but the Court is of the opinion that adjudicating the issue is premature particularly where the exact nature of the relationship between Brentwood EMS and the Borough of Brentwood is unknown based on the record currently before the Court.

6

The second question the Court must answer is whether Brentwood EMS is so intertwined with the Borough of Brentwood that extending immunity to it would serve the purposes of the PSTCA. The Court must consider whether: (1) a political subdivision created Brentwood EMS; (2) Brentwood EMS assists a political subdivision in serving its citizens; (3) a political subdivision appoints the Brentwood EMS's board of directors; (4) a political subdivision exercises substantial control over Brentwood EMS; (5) Brentwood EMS's assets would vest in a political subdivision if Brentwood EMS were to be dissolved; (6) Brentwood EMS's employees participate in any benefit plans exclusively reserved for employees of political subdivisions; (7) Brentwood EMS's sole source of income is a political subdivision; and (8) a political subdivision indemnifies Brentwood EMS, its employees, officers, and directors from claims and liabilities arising from services Brentwood EMS provides. *Christy*, 856 A.2d at 53-54. Determining whether Brentwood EMS qualifies as a "local agency" is a fact-intensive inquiry.

Brentwood EMS attached the contract with the Borough of Brentwood to its pleading and the Court's review of it reveals that Brentwood EMS is a nonprofit corporation that provides emergency medical services to borough citizens, residents, workers, visitors and guests of the borough. However, the Court cannot ascertain the answer to many of the other questions regarding whether Brentwood EMS is so intertwined with the Borough of Brentwood. Because this motion is advanced before discovery has commenced, the record does not affirmatively show whether the Borough of Brentwood exercises substantial control over Brentwood EMS. The record does not affirmatively demonstrate that the Brentwood EMS's assets would necessarily vest in the Borough of Brentwood. The record is absolutely silent with respect to (1) whether Brentwood EMS's employees participate in any Borough of Brentwood benefit plans exclusively reserved to the Borough of Brentwood's or other local authority's employees; (2) whether Brentwood EMS's sole

source of income is the Borough of Brentwood or some other local authority; and (3) whether the Borough of Brentwood or some other local authority indemnifies employees and officers and directors of Brentwood EMS.

Given the current state of the record, the applicable standard for a Rule 12(c) motion, and the inquiry the Pennsylvania Supreme Court deems required to answer the question of whether a specific entity qualifies as a "local agency," the Court denies Brentwood EMS's motion on the basis of invocation of the PSTCA. The record before the Court does not allow it to reach a determination as to whether Brentwood EMS is immune to suit under the PSTCA. The Court believes it prudent to permit the parties to develop a factual record with respect to the factors it must consider to answer whether Brentwood EMS is so intertwined with Brentwood Borough that extending immunity to it would serve the purposes of the PSTCA. This question of whether Brentwood EMS qualifies as a "local agency" will be better settled at the summary judgment stage.

**B. EMSSA**

The Court also denies Brentwood EMS's motion on the basis of invocation of the EMSSA. The EMSSA provides in pertinent part as follows:

> No EMS agency, EMS agency medical director or EMS provider who in good faith attempts to render or facilitate emergency medical care authorized by this chapter shall be liable for civil damages as a result of an act or omission, absent a showing of gross negligence or willful misconduct. . . . .

35 Pa.C.S.A. § 8151(2). The Act defines an "EMS agency" as including an entity that provides emergency medical services by operating an ambulance, and "EMS provider" as including an emergency medical responder and emergency medical technician. 35 Pa.C.S.A. § 8103. Brentwood EMS is an "EMS agency" and the responding paramedics in this case constitute "EMS providers" under the Act. "Gross negligence" has been defined by the Pennsylvania Supreme Court as "a form of negligence where the facts support substantially more than ordinary

8

carelessness, inadvertence, laxity, or indifference. The behavior of the defendant must be flagrant, grossly deviating from the ordinary standard of care." *Albright v. Abington Memorial Hospital*, 696 A.2d 1159, 1164 (Pa. 1997) (*quoting Bloom v. DuBois Regional Medical Center*, 597 A.2d 671, 679 (Pa.Super. 1991)). Willful misconduct is "conduct whereby an actor desired to bring about some result that followed or at least was aware that it was substantially certain to follow, so that such desire could be implied." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994).

While it may be that some of the actions of the paramedics were at worst the product of ordinary negligence, there are sufficient facts in controversy regarding other actions by them that may well demonstrate the requisite higher negligence necessary to avoid immunity. At this stage, without the benefit of discovery, the facts must be construed in the light most favorable to Ivers. He alleges that the paramedics failed to stabilize or immobilize his spine despite his severe injury. He notes this was particularly egregious given Pennsylvania's Basic Life Support protocol, which required spinal stabilization due to his symptoms. Exactly why and how he came to be released to his mother instead of transported to a hospital is not pled in the Complaint. However, when some of the same paramedics were summoned shortly thereafter to his home, and Ivers could not even hug himself, paramedics lifted him onto a stretcher without examining him or taking precautions for his injury by stabilizing his neck and back. Then, when Ivers arrived at the emergency room, a verbal argument ensued between hospital staff and paramedics as to why Ivers' neck and back were not stabilized.

Taking all this as true, Ivers will be permitted discovery to ascertain whether Brentwood EMS paramedics' actions displayed such a reckless disregard for his well-being that they rose to the level of gross negligence or that the paramedics committed willful misconduct. The Court denies Brentwood EMS's motion on the basis of invocation of the EMSSA.

### IV. CONCLUSION

For the aforementioned reasons of law and fact, Brentwood EMS's Motion for Judgment on the Pleadings (ECF No. 14) will be denied. An Order of Court will follow. Count XII will proceed to discovery. Brentwood EMS can renew its arguments after the close of discovery in a motion for summary judgment.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

February 26, 2021
Date