IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LUCAS M. IVERS,<br><br>*Plaintiff*,<br><br>v.<br><br>BRENTWOOD BOROUGH SCHOOL DISTRICT, *et al*,<br><br>*Defendants*. | Civil Action No. 2:20-cv-1244<br><br>Hon. William S. Stickman IV |

## **MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

In August 2020, Lucas M. Ivers ("Ivers") filed a Complaint in the Court of Common Pleas of Allegheny County, Pennsylvania against Brentwood Borough School District ("School District"), Floyd Olsavicky ("Olsavicky"), Aggie Greer ("Greer"), Brentwood Emergency Medical Services ("Brentwood EMS"), and a minor, N.M. (ECF No. 1-2). The case concerns an alleged assault of Ivers by N.M. during gym class. Defendants collectively removed the case to this Court in late August 2020. (ECF No. 1).

In September 2020, Defendants Brentwood School District, Olsavicky and Greer (collectively "School District Defendants") filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and a supporting brief. (ECF Nos. 5 and 6). The Court granted in part and denied in part the motion on February 26, 2021. (ECF Nos. 20 and 21). It dismissed with prejudice Counts I, II, IV, V, VII, VIII, IX and XI in their entirety as well as the claims asserted in Counts VI and X against Defendants Olsavicky and Greer in their official capacities. Count III against Brentwood Borough School District and Count VI against Defendant Olsavicky were dismissed

1

without prejudice for failure to state a claim. The Court permitted Count X against Greer to proceed without amendment. Ivers was given twenty-one days to file an amended complaint. (ECF Nos. 20 and 21).

Ivers filed an untimely Amended Complaint on March 24, 2021.[1] (ECF No. 25). It contains one count against the School District, Count I, entitled, "Violations of the United States of America's Constitution Under Amendment Fourteen Due Process Clause for Injury as a Result of State Created Danger Enforceable Via 42 U.S.C. § 1983," and it alleges, in pertinent part:

> 55. At all relevant times, defendant Brentwood Borough School District had a duty to hire adequate nurses and medical staff and/or have adequate procedures in place to properly treat injured students who showed signs of spinal injuries, including plaintiff.
>
> 56. Defendant Brentwood Borough School District's actions and/or inactions demonstrated an adopted practice, custom or policy of deliberate indifference to its students, including plaintiff, by failing to stabilize plaintiff's neck, back and/or spine when plaintiff exhibited clear symptoms of spinal trauma. Even worse, defendant Brentwood Borough School District acted affirmatively, as stated in this Complaint, to increase the risk of harm to its students.
>
> 57. Given plaintiff's condition, the harm caused by defendant Brentwood Borough School District, through defendant nurse, was foreseeable and fairly direct.
>
> 58. It was objectively unreasonable for defendant Brentwood Borough School District, through defendant nurse, to take affirmative action to aggravate and worsen the serious injuries suffered by plaintiff.
>
> \* \* \*
>
> 60. Defendant Brentwood Borough School District, through defendant nurse, affirmatively moved plaintiff off of the gym floor without stabilizing plaintiff's neck or back, thus rendering plaintiff more vulnerable to danger than had defendant not acted at all.

---

[1] The Amended Complaint was due by March 22, 2021.

(ECF No. 25, ¶¶ 55-58, 60). The School District then filed a Motion to Dismiss Count I of the Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 28). Briefing is now complete, and the motion is ripe for resolution by the Court. For the following reasons of law and fact, the School District's motion will be granted.

## I.   STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); *see also DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262–63 (3d Cir. 2008). Although this Court must accept the allegations in the Complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement, but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if

the complaint's well-pleaded facts give rise to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

## II.   FACTUAL BACKGROUND

On June 5, 2018, Ivers and the minor Defendant, N.M., were students at Brentwood High School, in the Brentwood School District. They were in gym class playing against one another in a basketball game. During the game, N.M. became angry with Ivers and made contact by "slapping," "elbowing [Ivers] in the ribs," and "pushing [Ivers] in the face." When N.M. attempted to slap Ivers again, at approximately 1:00 p.m., Ivers grabbed N.M.'s arm, which caused both boys to fall to the ground. N.M. then "lifted [Ivers] up on his shoulders and said, 'it's over.'" He slammed Ivers to the ground and Ivers' head and neck "forcefully" hit the gym floor. Ivers was unable to move; he could not feel his torso, arms or legs, including his left hand that was lodged underneath his body. The school nurse, Greer, arrived at approximately 1:15 p.m. When she asked Ivers to get up, he responded, "I can't move." Greer told Ivers he was fine and that he could get up from the floor. When he requested assistance to get up off the floor, Greer said he could do it himself. All the while, Ivers was crying. At some point, Greer "slid" Ivers to the wall with her hand on his back. At no point did Greer "stabilize or immobilize" Ivers' spine. (ECF No. 25, ¶¶ 9-23).

Brentwood Emergency Services paramedics arrived and Greer said Ivers was fine and it was "okay to lift [Ivers] without a spinal stabilization." Paramedics strapped Ivers onto a stretcher. When Ivers' mother arrived, she expressed concern because his shoulders appeared crooked. Paramedics told her that Ivers was okay, his condition was not serious, and that the nurse had cleared his neck. (ECF No. 25, ¶¶ 24-32).

4

Ivers' mother took him to her vehicle with the assistance of two men and transported Ivers to a nearby MedExpress for treatment. On the way, as Ivers was in and out of consciousness, she determined he needed to go to Children's Hospital instead of MedExpress. She then drove home and got Ivers an ice pack, ibuprofen and water. While she was inside, Ivers slid out of the car and onto the driveway pavement. Brentwood Emergency Services paramedics, some of whom had treated Ivers at the school, arrived. One paramedic asked Ivers to hug himself, which he was unable to do. That paramedic took Ivers' arms and crossed them against his chest. Another paramedic lifted Ivers' legs while another paramedic lifted Ivers' arms to place him on a stretcher. Ivers was transported to the emergency room at Jefferson Memorial Hospital. Once there, doctors and staff asked why Ivers' neck and back were not stabilized and an argument ensued between them and the paramedics. (ECF No. 25, ¶¶ 33-47).

### III. ANALYSIS

At issue is Ivers' claim against the School District contained in Count I of the Amended Complaint. Ivers alleges a violation of his substantive due process rights under the Fourteenth Amendment due to the injuries he suffered as a result of N.M.'s physical attack and his medical treatment thereafter by the school nurse, Greer.[2] Ivers alleges the School District "had a duty to hire adequate nurses and medical staff and/or have adequate procedures in place to properly treat injured students who showed signs of spinal injuries, including plaintiff," that its "actions and/or inactions demonstrated an adopted practice, custom or policy of deliberate indifference to its students, including plaintiff, by failing to stabilize plaintiff's neck, back and/or spine when plaintiff exhibited clear symptoms of spinal trauma," and that it "acted affirmatively" "to

---

[2] In its February 26, 2021 Memorandum Opinion, the Court discussed the nature of a substantive due process claim as well as one brought under a stated-created danger theory of liability. (ECF No. 20, pp. 5-7). That discussion is hereby incorporated herein.

5

increase the risk of harm to its students." (ECF No. 25, ¶¶ 55-58, 60). In response to the School District's motion seeking dismissal of Count I, Ivers contends that he "has adequately pled a custom, practice or policy against the School District." (ECF No. 33, pp. 3-4). He goes on to argue that he did not need to plead prior instances of conduct supporting the existence of a policy, practice or custom because "the need for competent, trained medical personnel in the school setting is so obvious," and the School District "needed to hire competent school nurses, implement safety procedures and train its employees so that they could appropriately respond to injuries of its students." (ECF No. 33, pp. 6-7). Essentially, Ivers is pursing a single-violation failure to train claim.[3]

A municipal entity, like the School District, cannot be held liable pursuant to § 1983 under the theory of *respondeat superior*. *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 691 (1978). Instead, municipal entities may only be held liable under § 1983 on (1) an express municipal policy, such as an ordinance, regulation, or policy statement, *see Monell*, 436 U.S. at 694, (2) a "widespread practice, that although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law," *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)), or (3) the decision of a person with "final policymaking authority." *See Praprotnik*, 485 U.S. at 123; *see also Pembaur v. City of*

---

[3] Ivers has failed to connect a policy or custom to a municipal decisionmaker or demonstrate prior notice through a pattern of similar unconstitutional conduct. In other words, Ivers does not allege in his Amended Complaint there was a pattern of similar incidents involving School District employees. Furthermore, there is no allegation that the School District had notice that its training to employees regarding the treatment of injured students was deficient in any particular respect. Consequently, Ivers had no choice but to argue in response to the School District's motion that he is proceeding under a single-violation theory of liability. (ECF No. 33, pp. 6-7). He asserts, "[p]rior instances are not required because the need for competent, trained medical personnel in a school setting is so obvious." (ECF No. 33, p. 7).

6

*Cincinnati,* 475 U.S. 469, 481-83 (1986). A municipality may be held liable under § 1983 only when the enforcement of the municipal policy or practice was the "moving force" behind the violation of a plaintiff's federal protected right. *Bd. of Cnty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 400 (1997); *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989).

The Third Circuit has held that it is possible to hold a municipality liable for a substantive due process violation even if none of its employees are liable, *see Fagan v. City of Vineland*, 22 F.3d 1283, 1292 (3d Cir. 1994), however, there must be a "direct causal link" between the policy and the constitutional violation. *See Brown v. Pa., Dep't of Health and Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 482 (3d Cir. 2003) (citing *City of Canton,* 489 U.S. at 385). The policy or practice requirement is intended to "distinguish acts of the municipality from the acts of the employee for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479. A municipal policy or practice may be established one of two ways (1) through a decisionmaker possessing final authority issuing an official proclamation, policy, or edict, or (2) a course of conduct where such practices are permanently well-settled. *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted). As to the latter, a practice (or custom) requires both proof of knowledge and acquiescence by the decisionmaker. *Id.* at 658.

"A municipality's failure to adequately train its employees gives rise to a cause of action under Section 1983 if the deficient training reflects a deliberate indifference to an individual's civil rights, and is 'closely related to the ultimate injury.'" *Kane v. Chester Cnty. Dept. of Children, Youth, and Families*, 10 F. Supp. 3d 671, 688 (E.D. Pa. 2014) (quoting *Kline ex rel. Ardnt v. Mansfield*, 255 F. App'x 624, 629 (3d Cir. 2007)). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan Cty.*, 520 U.S. at 410. While "[g]enerally, deficient training

7

can only amount to … deliberate indifference 'where the failure to train has caused a pattern of violations,'" the Third Circuit Court of Appeals recognizes an exception to this rule in the single-violation theory. *Id.* (quoting *Berg. v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000)).

Under the single-violation theory, Ivers had to plead: (1) the violation of his federal rights was a highly predictable consequence of the School District's failure to train; and, (2) the likelihood of recurrence and predictability of the violation justifies a finding that that the School District's failure to train reflected a deliberate indifference to the obvious consequence of their choice. *Id.* In addition to setting forth facts demonstrating deliberate indifference, Ivers must also demonstrate that the identified deficiency is "closely related to the ultimate [constitutional] injury." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1028 (3d Cir. 1991) (alterations in original) (quoting *Canton*, 489 U.S. at 391). The operative inquiry to establish causation, therefore, rests on whether "the injury [could] have been avoided had the employee been trained under a program that was not deficient in the identified respect." *Canton*, 489 U.S. at 391. Although causation must be proven separately from deliberate indifference, "[t]he high degree of predictability [in a single-incident case] may also support an inference of causation—that the municipality's indifference led directly to the very consequence that was so predictable." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 226 (3d Cir. 2014) (quoting *Brown*, 520 U.S. at 409-10).

Because deliberate indifference is a stringent standard of fault, the Court must carefully examine failure to train claims, even at the motion to dismiss stage. *Pembaur*, 475 U.S. 410. The Court's review of the factual averments in the Amended Complaint lead it to conclude that Ivers' claim does not fall into the narrow range of circumstances that could support a claim of deliberate indifference based on a single incident. Ivers makes general and vague allegations

8

with respect to the School District's failure to train employees in treating students' injuries and his remaining allegations are conclusory. (ECF No. 25, ¶¶ 55-61). "Liability in single-incident cases depends on '[t]he likelihood that the situation will recur and the predictability that an [ ] [an employee] lacking specific tools to handle that situation will violate citizens' rights.'" *Thomas*, 749 F.3d at 223-24 (quoting *Bryan Cty.*, 520 U.S. at 409). Ivers had to set forth adequate facts showing a deliberate indifference to his constitutional rights by the School District – i.e., that the need for the School District to provide specific training in order to avoid constitutional injury he suffered was "highly predictable" or "patently obvious." *Connick v. Thompson*, 563 U.S. 51, 74 (2011). It is not a reasonable inference from the facts pled in the Amended Complaint that the School District's need to more adequately train its employees, particularly a school nurse, was obviously going to lead to a constitutional violation of the type Ivers' suffered, or that it was "highly predictable" that failing to train Greer would amount to "conscious disregard" for Ivers' rights.

Ivers does not allege that Greer was a wholly untrained or an unlicensed nurse. It is reasonable inference from the facts pled that Greer was a licensed nurse properly certified as a school nurse. As pled, there are no facts as to what training Ivers believes the School District should have provided Greer, or what training she actually received both as a nurse and by the School District. The only thing that Ivers pleads is that the School District, "had a duty," to "have adequate procedures in place to properly treat injured students who showed signals of spinal injuries." (ECF No. 25, ¶ 56). It was incumbent upon Ivers to assert well-pleaded facts which permit a plausible inference of deliberate indifference grounded upon a risk of injury that was a "highly predictable consequence" of the School District's failure to train its employees. *Thomas*, 749 F.3d at 225 (quoting *Connick*, 563 U.S. at 63-64). In order to state a valid cause of

action against the School District, Ivers had to provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. Ivers' allegations do not remotely approach the specificity required to state a single-violation failure to train claim.

Count I against the School District amounts to little more than a formulaic recitation of the elements of a cause of action, without additional supporting well-pleaded facts to show how School District could bear constitutional liability. Ivers fails to adequately plead facts supporting the "rigorous standards of culpability and causation." *Bryan Cty.*, 520 U.S. at 405. At most, Count I states a claim sounding in negligence as to Greer, which is insufficient to state a plausible claim for violation of Ivers' substantive due process rights by the School District under a theory of *Monell* liability. Count I will be dismissed with prejudice as leave to amend would be futile. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (a court may decide to deny leave to amend for reasons such as undue delay, bad faith, dilatory motive, prejudice, and futility); *see also* 3 Moore's Federal Practice – Civil § 15.15[4] (2019) ("An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss."). Ivers has had two opportunities to plead a cognizable claim against the School District, and has failed to do so. The facts as set forth in the Amended Complaint relevant to the School District have remained unaltered since the filing of the original Complaint. No further amendment will be permitted, and Count I will be dismissed with prejudice for failure to state a claim.

### IV. CONCLUSION

For the aforementioned reasons, Count I will be dismissed with prejudice. An Order of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

___5-25-21_____
Date